# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FARRON GENE AMERICAN HORSE, SR.,<br><br>Defendant. | **Cause No. CR 23-63-GF-BMM**<br><br><br>**ORDER ON DEFENDANT'S MOTION TO SUPPRESS** |

## INTRODUCTION

A grand jury indicted Defendant Farron Gene American Horse, Sr. ("American Horse") on the following charges: 1) aggravated sexual abuse in violation of § 1153(a) and 2241(a), (c); 2) sexual abuse; and 3) abuse sexual contact in violation of 18 U.S.C. § 1153(a) and 2244(a)(2). (Doc. 1.) American Horse filed a Motion to Suppress. (Doc. 27.) American Horse raises two claims. American Horse first argues that FBI agents violated his Fifth Amendment right against self-incrimination after failing to cease a custodial interrogation when he asked to remain silent. American Horse further contends that Fort Belknap tribal court subjected him to an illegal prosecution and statements made during the prosecution should not be

1

admitted against him. American Horse seeks to suppress the statements from the pre-trial custodial interrogation occurring on January 28, 2021, be suppressed. (Def. Ex. 1.) American Horse also requests that the statements made during arraignment proceeding in the Fort Belknap Tribal Court be suppressed. (Def. Ex. 3.) The Government opposes. (Doc. 35.) The Court held a hearing on February 10, 2025. (Doc. 37.)

## BACKGROUND

### I.    Custodial Interrogation

Fort Belknap Tribal Police arrested American Horse on October 2, 2020. (Doc. 28 at 2.) American Horse was charged with sexual assault and abuse of a child both in violation of Fort Belknap Law & Order Code. (*Id*.; Doc. 28-1.) American Horse was detained for approximately six months in the Fort Belknap Detention Cetner. (*Id*.)

Special Agent Justin Harken ("SA Harken") and Fort Belknap Police Criminal Investigator Curtis Fox interviewed American Horse while in tribal custody on October 8, 2020 (*Id*.) It is unclear whether the officers read the *Miranda* warnings to American Horse at the start of the interview. American Horse agreed to speak with the officers and signed a waiver of his rights. (Doc. 36-2.) The parties do not contend the statements made during the October 8, 2020, interrogation violate American Horse's constitutional rights.

2

SA Harken interviewed American Horse a second time while in custody on January 28, 2021. (*Id*.) SA Harken read the *Miranda* warnings to American Horse at the start of the interview. (Def. Ex. 1.) American Horse agreed to speak with SA Harken. (*Id*.) SA Harken starts to ask American Horse about accusations made by his children that American Horse made sexual contact with them at approximately minute 6:25. (*Id*.) American Horse explains that the children's mother had threatened to "do whatever in her power to get [American Horse] away from the kids." (*Id*. at 5:35) SA Harken responds that he "has no reason to believe that [the children's mother] told either of girls to make this up." (*Id*. at 5:43.) SA Harken asserts that he has no indication to believe the mother is lying. SA Harken further explains that they children are "shook up and traumatized" by the incident. (*Id*. at 6:02.) Harken adds "what is making it worse is your unwillingness to accept responsibility." (*Id*. at 6:08.)

SA Harken expressed uncertainty as why the children think they are responsible for the alleged sexual touching and states "somebody has to be responsible, so who would that be?" (*Id*. at 6:27.) American horse relies, "I'm done. I'm done with this." (*Id*. at 6:32.) SA Harken responds, "Ok." (*Id*. at 6:35.) American Horse nevertheless continues speaking: "No matter what you guys say you guys are . . . never mind I don't even want to go there." (*Id*. at 6:40.) Harken corrects American Horse: "You can go there." (*Id*. at 6:42.) American Horse keeps

talking and insists that he is cooperating and has "nothing to hide." (*Id*. at 6:58.)  The interview continues and SA Harken suggests "[l]et's go through the events again." (*Id*. at 7:03.)

The interview continues for approximately 25 more minutes. American Horse discusses his life and relationship with his children. At approximately minute 25:46 into the interview, American Horse states "I'm done, that's alright, this is done. You are going to do whatever you want." (*Id*. at 25:51.)  SA Harken responds, "I'm trying to figure this out." (*Id*. at 26:02.) Harken continues questioning American Horse for another 5 minutes in an apparent attempt to elicit a confession. American Horse objects, "I'm done here I want the polygraph" at 29 minutes into the interview. (*Id*. at 29:26.) SA Harken continues questioning American Horse. American Horse finally asks, "are we done here?"  at approximately 32 minutes into the interview at which point SA Harken ends the interview. (*Id*. at 32:13.)

## II.    Fort Belknap Tribal Prosecution.

American Horse was prosecuted in the Fort Belknap Tribal Court and pled guilty to sexual assault and abuse of a child. (Doc. 28-1.) The circumstances surrounding American Horse's tribal prosecution prove identical to the events giving rise to American Horse's federal prosecution. (*Id*.) The tribal court sentenced American Horse to two years in custody, with all but 171 days suspected and credit for time service. (*Id*. at 4.) American Horse seeks to prohibit the Government from

using evidence of the tribal court prosecution in its case in chief.

## LEGAL STANDARD

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . ." When a person is "taken into custody or deprived of freedom by the authorities in any significant way and is subjected to questioning, privilege of self-incrimination is jeopardized." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). A person "must be warned that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *Id*. at 479.

*Miranda* warnings ensure the person is aware of their constitutional rights. A person may waive these rights once properly advised. "A heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his" rights under the Fifth Amendment. *Id*. at 475. Silence does not presume waiver of constitutional rights. *Id*. "The government has the burden by a preponderance of the evidence that [a suspect] validly waived his rights." *United States v. Johnson*, 289 F. Supp. 2d 151, 157 (D. Conn. 2003) (citing *United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir.1996); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

The interrogation must cease if a suspect indicates a desire to remain silent.

*Miranda* at 474. If the suspect requests counsel, the interrogation must cease until an attorney is present. *Id.* Not all *Miranda* waivers are effective. The U.S. Supreme Court explained in *Edwards v. Arizona* that a valid waiver of that right cannot be established by showing only that the suspect responded to further police-initiated custodial interrogation even if he has been advised of his rights. . . . [A suspect who has requested an attorney] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 485 (1981). The courts recognize no "per se proscription of indefinite duration upon any further questions by a police officer on any subject, once the person in custody has indicated a desire to remain silent." *Michigan v. Mosley*, 423 U.S. 96, 103 (1975).

## ANALYSIS

### I.     American Horse's custodial interrogation.

American Horse seeks to suppress statements made during a custodial interview. It remains undisputed that American Horse was in custody for purposes of *Miranda* during the second interrogation. The question remains whether American Horse clearly requested the interrogation to stop to invoke his right to remain silent. "Indirect ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to

invoke that right for the purposes of *Miranda*." *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007). The suspect in *Ferrer-Montoya* made an initial statement after officers read the *Miranda* warnings to him, "[w]hat else can I say?" The Eighth Circuit concluded that the statement failed to constitute an unequivocal expression of a desire to remain silent. *Id*.

American Horse relies on *Anderson v. Terhune*, to argue that his statements of "I'm done" were not ambiguous. (Doc. 28 at 5., *citing Anderson v. Terhune*, 516 F.3d 781, 788 (9th Cir. 2008)). The defendant in *Anderson* was questioned in custody, by four officers, for three and half hours. *Anderson* at 785. The officers questioned the defendant about a murder. The defendant made statements, such as, "I don't even want to talk about this no more" and "I plead the Fifth." *Id*. at 785-86. The Ninth Circuit concluded that, in context, the defendant had asserted his right to silence by saying "I'm through with this. I'm through. I wanna be taken in custody" and additionally saying "I plead the Fifth." *Id*.

American Horse presents a slightly different situation. American Horse asserted that "I'm done. I'm done with this." (Def. Ex. 1. at 5:35.)

Following American Horse's somewhat equivocal request, he offered comments about his cooperation and the fact that he has "nothing to hide." (*Id*. at 6:58.) American Horse made no unequivocal statement, such as "I have

nothing to say." *Arnold v. Runnels*, 421 F.3d 859, 865 (9th Cir.2005). American Horse also made no indication that he was "pleading the Fifth" or asserting his right to remain silent. *Cf. Arnold*, 421 F.3d at 865. American Horse's motion should be denied.

American Horse's statements between the 6:25 minute mark and the 25:46 minute mark of the interrogation were ambiguous and not sufficient, taken in context, to assert his right to remain silent. American Horse continued to talk and "cooperate" after apparently attempting to terminate the interview at the 6-minute mark. American Horse's motion to suppress statements made between the 6:25 and 25:46 minute mark during his January 28,2021 custodial interrogation will be denied. The statements made after the 25:46-minute mark should be suppressed.

## II.    Fort Belknap Tribe prosecution of American Horse.

American Horse seeks to limit the use of a Fort Belknap Tribal Court prosecution regarding the same conduct. The Government responded that it will not use the prosecution or American Horse's statements during its case-in-chief. (Doc. 35.) The Government instead intends to use evidence of the tribal court prosecution as potential impeachment of American Horse if he chooses to testify in Court. American Horse agrees that evidence from the tribal court prosecution potentially

could be admitted into evidence though the Government's cross-examination of American Horse. Without more context, the Court should not make a predetermination about how evidence of the tribal court prosecution should be presented. American Horse's motion to suppress evidence related to the tribal court prosecution will be denied.

Accordingly, **IT IS HEREBY ORDERED** that American Horse's Motion to Suppress (Doc. 27.) is **GRANTED in part** in accordance with the above order**.**

DATED this 14th day of February, 2025.


_____
Brian Morris, Chief District Judge
United States District Court

9